**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES,** | : | |
| **Prosecution** | : | |
| | : | **CASE NO. 3:13-cr-00071-4 (VLB)** |
| **v.** | : | |
| | : | **NOVEMBER 13, 2014** |
| **JUAN J. RIVERA-ORTIZ,** | : | |
| **Defendant** | : | |

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS**

Before the court are defendant Juan J. Rivera Ortiz's motions to suppress wiretaps from target telephones fourteen and fifteen.  Dkt. Nos. 643 & 646. Defendant argues that the affidavits supporting the warrant requests for target telephones fourteen and fifteen fail to demonstrate that traditional investigative techniques had been attempted and proven unsuccessful before the government applied for the wiretaps.  Defendant argues that this failure requires suppression of any and all evidence obtained, directly or indirectly, from target telephones fourteen and fifteen.  Defendant's wife and co-defendant Ivette Pagan-Rodriguez has joined in the motions.  For the following reasons, the motions to suppress are DENIED.

**I. LEGAL STANDARD**

Pursuant to 18 U.S.C. § 2518(1)(c), a court may authorize a wiretap upon an application that includes a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  A judge may authorize a wiretap if the judge "determines on the basis of the facts submitted by the applicant that . . . (c) normal investigative procedures have been tried and

1

have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

The issuing court's decision to issue a wiretap is given considerable deference. *See, e.g., United States v. Muhammad*, No. 3:09cr265, 2010 U.S. Dist. LEXIS 51679, at *6 (D. Conn. May 26, 2010) ("On review, the Second Circuit 'grant[s] considerable deference to the district court's decision whether to allow a wiretap, . . .' . . . The deference is to the judge who authorized the wiretap." (quoting *United States v. Concepcion*, 579 F.3d 214, 217 n.1 (2d Cir. 2009)). The reviewing court's role is limited to "ensuring that the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Gambardella*, No. 3:09cr130, 2009 U.S. Dist. LEXIS 120768, at *3 (D. Conn. Dec. 29, 2009) (quoting *Concepcion*, 579 F.3d at 217).

It has long been established that every imaginable traditional investigative method need not be employed and fully exhausted before a warrant may properly be authorized. "In determining the sufficiency of the application a reviewing court must test it in a practical and commonsense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all 'other investigative procedures'." *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990) (quoting *United States v. Scibelli*, 549 F.2d 222, 226 (1977)). "The district court must ensure that [the § 2518(3)(c)] standard has been met, . . . so that 'wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Concepcion*, 579 F.3d at 218 (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). "[T]he

2

question is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement." *Concepcion*, 579 F.3d at 218.  Although telephonic surveillance may only be used when necessary to assist in law enforcement, the government need not exhaust every possible investigative technique before seeking a wiretap:

> To be sure, the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. "[T]he statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999) (alteration and internal quotation marks omitted). "Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion." S. Rep. No. 90-1097 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2190 (citation omitted).

*Concepcion*, 579 F.3d at 218.

The Second Circuit has noted that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (quotation and citation omitted).  Further, the Second Circuit has approved wiretaps in "complex and sprawling criminal cases involving large conspiracies." *Concepcion*, 579 F.3d at 218 (citations omitted).

"[M]ere 'speculation that alternative strategies might have been effective' is not a valid basis for suppression." *United States v. Lee*, No. 13cr461, 2014 U.S. Dist. LEXIS 5238, at *16 (S.D.N.Y. Jan. 15, 2014) (quoting *United States v. Rajaratnam*, No. 09 cr 1184, 2010 U.S. Dist. LEXIS 143175, at *87 (S.D.N.Y. Nov. 24,

3

2010)); *see also United States v. Shipp*, 578 F. Supp. 980, 989 (S.D.N.Y. 1984)

("Monday morning quarterbacking as to what investigative techniques the agents

should have employed in addition to what they did employ is utterly unrealistic, if

not naive.").

## II. DISCUSSION

Defendant asserts that the affidavits supporting both wiretap applications

failed to establish that the use of traditional techniques of law enforcement had

failed or that they were reasonably unlikely to succeed.  The two motions raise

identical legal arguments, differing only in their discussions of the facts of the

respective affidavits.

## 1. Cooperating Witnesses and Confidential Informants

With regard to the affidavits for both target telephone fourteen and target

telephone fifteen, defendant argues that the special agent "made no use of

cooperating witnesses or confidential informants" and that the court needs a

"specific explanation" as to why "no efforts" were made to use cooperating

witnesses or confidential informants to determine co-defendant Pedro Rivera's

alleged source of cocaine in Puerto Rico.  In both affidavits, Special Agent Rod

Khattabi ("SA Khattabi") states that the confidential sources are unwilling to

testify, and are either unable or unwilling to proactively cooperate against higher

members of the alleged conspiracy.  The affidavits also state that the co-

conspirators are either related or members of insular communities.  These are

sufficient explanations of why the use of cooperating witnesses and confidential

informants was insufficient.

## 2. Pen Registers and Toll Records

Defendant argues as to both warrant applications that the affidavit's treatment of pen registers is inconsistent, in that the affidavits cite to information gathered from the pen registers, together with other information, to support the claim of probable cause, but then claim that the pen registers are unlikely to gather the information investigators desire.  The court is not persuaded that these statements are inconsistent.  Although SA Khattabi cited to information from the pen registers for target telephones fourteen and fifteen to establish probable cause, SA Khattabi also noted that pen registers do not allow agents to identify the parties to the phone calls, and cannot differentiate legitimate calls from those associated with illegal activity. Pen registers provide some useful information, but they otherwise suffer from limitations that hampered the goals of this investigation.  SA Khattabi's affidavit explicitly recognizes this, noting that the pen registers have been "helpful," but then describing their limitations.  The fact that information obtained from pen registers can buttress other information, and together with such other information establish probable cause, does not make inconsistent a statement that information obtained from pen registers is of limited utility.

## 3. Physical Surveillance

Defendant argues that the affidavits for target telephones fourteen and fifteen show that physical surveillance was successful in identifying the participants and locations of drug transactions prior to the wiretap applications. Although the affidavits describe much information gathered from physical

surveillance, the affidavits also explain that the surveillance targets employed a variety of counter-surveillance techniques that prevented physical surveillance from being sufficient to meet the goals of the investigation.  The affidavits describe the following particularized challenges for physical surveillance: (1) some co-defendants drove multiple cars and used rental cars on occasion; (2) some co-defendants were surveillance-conscious; (3) at least one co-defendant would send a stand-in to meet with customers on his behalf; (4) the lighting conditions, topography  and risk of being detected in the small town of Morovis, Puerto Rico; and (5) one co-defendant was believed to be using a "lookout" to watch for law enforcement officers at his residence.  The affidavits sufficiently describe why physical surveillance was unlikely to succeed in meeting the goals of the investigation.

## 4. Undercover Law Enforcement Officers

In both affidavits at issue, SA Khattabi stated that the targets of the investigation were "close-knit," including several that were related by blood, and thus it would be unlikely that an undercover agent would be introduced to the high level members of the conspiracy, or be told the details of the transportation and storage of narcotics and their proceeds.  Defendant's conclusory assertion that these are "generalizations unsupported by a factual basis" and that the court should require a "full and complete statement" on the basis of SA Khattabi's knowledge is unpersuasive.  SA Khattabi's affidavits demonstrate his familiarity with the targets of the investigation and the relationships between those targets,

and sufficiently describe the reasons the use of undercover officers would likely

fail.

## 5. Witness Interviews and Grand Jury Testimony

SA Khattabi stated in his affidavits that arresting co-defendants to

interview them would not achieve the objectives of the investigations because the

social and familial connections between the co-defendants may prevent them

from cooperating with the investigation. Further, because the community of New

London is "tight-knit," such actions could also alert potential targets to the

existence of the investigation, causing them to flee the jurisdiction or further

obscure their illegal activity.  The court is not persuaded by defendant's

argument that SA Khattabi "omitted any references to specific efforts made to

address the cooperation potential of others associated with the DTO."[1]  The

affidavit contains sufficient facts regarding the insufficiency of witness interviews

to be more than "minimally adequate" to support the determination that a wiretap

is necessary.

SA Khattabi's affidavits identify similar inadequacies in the use of grand

jury subpoenas, as well as the fact that those subpoenaed may choose to invoke

the Fifth Amendment right against self-incrimination.  Again, defendant makes

the conclusory assertion that SA Khattabi's statements are "opinions

unsupported by a factual basis."  This argument is without merit, as the affidavits

contains sufficient factual material to demonstrate SA Khattabi's familiarity with

---

[1] Defendant does not define the acronym "DTO," and the court is unable to
determine the definition from either of defendant's briefs.

the targets of the investigation, which establishes the basis of his predictions regarding the ineffectiveness of grand jury subpoenas.

## 6. Search Warrants

Defendant argues that SA Khattabi knew at the time that he executed his affidavits that search warrants had produced positive results, but "downplayed" the value of search warrants in the affidavits.  This argument, like many of defendant's arguments, ignores that fact that the law does not require the government to exhaust every other possible investigative technique before seeking a search warrant.  The affidavits demonstrate that electronic surveillance is needed to identify targets for search warrants, and that because the targets' community is close-knit, if search warrants are not executed simultaneously, it is possible that contraband at other locations could be obscured or destroyed before it is located.

## 7. Collection of Garbage

SA Khattabi stated in his affidavits that Defendant argues that garbage seizures had been contemplated from various targets' residences, but that seizing garbage from defendant Pedro Rivera's residence would be difficult because it is a condominium with shared trash, and thus agents must witness the trash being emptied in order to seize it.  Defendant asserts, without any citation, that "it is common knowledge that premises with multiple living units are usually assigned individual trash containers" and that it is "common knowledge that individuals sift through another's trash container in order to recover returnable bottle, or . . . food."  These unsupported assertions are insufficient to challenge

SA Khattabi's affidavits.  The affidavit contains facts that are more than "minimally adequate" to support the conclusion that garbage seizures would be insufficient to achieve the goals of the investigation.

**8.  Pole Cameras**

SA Khattabi stated in his affidavit that agents had successfully used pole cameras during the investigation but that the utility of the cameras was limited because they cannot capture what is happening inside of a structure, or capture what is said during meetings or transactions.  Defendant argues that "it would appear that valuable evidence could still be obtained with a pole camera in conjunction with confidential source activity and other traditional law enforcement techniques."  This argument ignores the limitations already described regarding confidential witnesses, and also ignores the legal fact that the agents are not required to exhaust every possible alternative investigative technique before seeking a wiretap.

**9. GPS Tracking**

SA Khattabi's affidavits state that the agents have attempted to use GPS tracking devices on vehicles operated by targets, but that the efficacy of GPS tracking is undermined by the fact that targets often use multiple vehicles, or lend those vehicles out to other people, requiring agents to use physical surveillance to confirm a target's presence in the vehicle.  Defendant argues that "despite this perceived limitation, it would appear that valuable evidence could still be obtained with a GPS tracking device in conjunction with confidential source activity, physical surveillance and other traditional law enforcement techniques."

Defendant's vague speculation as to the potential results of further use of alternative investigative techniques is unpersuasive, and ignores the limitations already described regarding the use of confidential witnesses and physical surveillance.

## 10. Defendant's Requests for An Evidentiary Hearing

Although defendant repeatedly requests an evidentiary hearing in both motions to suppress, no evidentiary hearing is necessary, as defendant has failed to cite facts tending to show that his arguments are meritorious.  Moreover, a review of the record plainly refutes his arguments, showing them to be without merit.  Just as a defendant challenging the veracity of an affidavit supporting a warrant application must make a "substantial preliminary showing" that the affidavit included "a false statement knowingly and intentionally, or with reckless disregard for the truth" in order to require a hearing, *Franks v. Delaware*, 438 U.S. 154, 155 (1978), so must a defendant challenging the necessity requirement.  *Cf. United States v. Williams*, No. 13-80034, 2013 U.S. Dist. LEXIS 182139, at *27 (S.D. Fla. Dec. 6, 2013) (denying defendant's request for a *Franks* hearing to challenge the necessity showing in a warrant application affidavit where the court found that the affidavit satisfied the necessity requirement because it "detailed all of the investigative techniques already employed during the investigation and showed that any other technique reasonably appeared to be unlikely to succeed or to be too dangerous"); *United States v. Deas*, No. 3:07cr73, 2008 U.S. Dist. LEXIS 84179, at *2 n.2 (D. Conn. Oct. 21, 2008) (noting that no evidentiary hearing was conducted for defendant's motion to suppress on the grounds of failure to

10

exhaust conventional techniques, among other things, because defendant could not make a substantial showing of misleading omissions).

## 11 Good Faith

Defendant argues generally in both motions that "the incongruity of SA Khattabi's representations to the wiretap issuing Court about the usefulness of normal investigative techniques calls into question" whether the government met the Title III requirement that traditional investigative procedures be undertaken in 'good faith.'"  Defendant further argues that "it appears that the government 'manufactured necessity.'"  Defendant cites to two cases from the Ninth Circuit to support his argument that the government failed to act in good faith, *United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977), and *United States v. Staves,* 383 F.3d 977, 980 (9th Cir. 2004).  First, defendant fails to identify the "incongruit[ies]" in SA Khattabi's affidavit.  Second, the cases cited by defendant are inapposite.  In *Spagnuolo*, the affidavit at issue contained "no specific facts which would permit the district judge independently to determine whether the affidavit satisfies section 2518(1)(c)" and further, was "devoid of allegations that show why in this particular gambling investigation ordinary investigative techniques will likely fail or be too dangerous."  549 F.2d at 711. In fact, in *Staves*, the court found that the affidavit "provides a thorough and convincing explanation of the need for wiretap evidence to uncover the full scope of the conspiracy."  383 F.3d at 981.  Similarly, here SA Khattabi's affidavits contain more than enough factual material to be more than minimally adequate to support the determination made by the issuing judge.

11

**CONCLUSION**

For the reasons stated above the motions are DENIED.

IT IS SO ORDERED.


_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: November 13, 2013**